UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM J. BIERBOWER, et al.,<br><br>    Appellants,<br><br>        v.<br><br>KEVIN R. MCCARTHY,<br><br>    Appellee. | Civil Action No.  05-0576 (JDB) |

## MEMORANDUM OPINION

This case comes on appeal from the United States Bankruptcy Court for the District of Columbia.  Appellants are trustees of the Alexander and Margaret Stewart Trust ("Stewart Trust"), a charitable trust that supports pediatric health care for low-income families in the District of Columbia.  Appellee is the bankruptcy trustee of Crossroad Health Ministry ("Crossroad"), a nonprofit provider of pediatric care that Stewart Trust had supported for many years.[1]  This appeal challenges the Bankruptcy Court's decision that Stewart Trust did not retain an ownership interest in a $60,000 grant given to Crossroad prior its bankruptcy filing.  For the reasons discussed below, the Court affirms the decision of the Bankruptcy Court.

## BACKGROUND

In December 2003, Stewart Trust approved a $60,000 grant to support a Crossroad program that offered health-care services for infants and toddlers in the District's Ward 5

---

[1] Crossroad operated under the name "Community Medical Care Health Center."

-1-

neighborhood.  See Compl. at ¶¶ 6- 7, Ex. A.[2]  A letter accompanying the grant check stated that "these funds must be used in 2004 for the purposes stated in your proposal unless changed with our written permission."  Id. at ¶ 8.  Crossroad's proposal had indicated that the "purpose of the funding request" was a "Pediatric: Early Intervention Program."  Id. at Ex. A.  The letter from Stewart Trust to Crossroad imposed no further limitations on the grant.  Id. at ¶ 8.  Crossroad deposited the funds in its general operating fund, which was used for routine operating expenses.  Id. at ¶ 8.

On February 27, 2004, Crossroad filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Id. at ¶ 5.   Crossroad had neglected to pay federal withholding taxes for the two years prior and owed a substantial amount of money to additional creditors.  Id. at 13.  Stewart Trust wrote to Crossroad requesting return of the funds so that they could be distributed to another charitable organization.  Id.  at ¶¶ 11, 14.

Crossroad declined to return the funds and filed a complaint in the United States Bankruptcy Court for the District of Columbia to determine ownership of the $60,000 grant.  The Bankruptcy Court ruled that Stewart Trust was not entitled to any return or transfer of the funds because the grant was an asset of the bankruptcy estate and therefore must be utilized for the payment of debts.  The Bankruptcy Court held that the provisions of D.C. Code § 29-301.56, which governs the liquidation of assets of a nonprofit organization, can be applied in a bankruptcy proceeding to determine the priority in which assets are allocated in a dissolution or liquidation.

---

[2] Citations to "Compl." refer to the May 24, 2004, Complaint to Determine Ownership of Property filed by Appellee in the Bankruptcy Court.  Appellants do not dispute these facts.  See In re Crossroad Health Ministry, Inc., No. 04-0318, Mem. in Supp. of Trustee's Mot. for Summ. J. at 2 (Bankr. D.D.C. Aug. 13, 2004) (providing "statement of undisputed material facts").

The Bankruptcy Court interpreted the statute as requiring that the grant funds first be used for payment of Crossroad's debts and administrative expenses of the bankruptcy before they could be returned or transferred to another charity.[3]  The Bankruptcy Court also found that a resulting trust did not arise from the charitable-use limitation that accompanied the grant, and it declined to impose a constructive trust despite Stewart Trust's assertion that Crossroad intentionally concealed its perilous financial condition during the grant-solicitation process.

Stewart Trust appeals the ruling of the Bankruptcy Court, arguing that the provisions of D.C. Code § 29-301.56 may be interpreted to permit a return or transfer of the funds.  Appellants also contend that a resulting trust arose from the charitable-use limitation that accompanied the grant or, in the alternative, that the Bankruptcy Court should have imposed a constructive trust.

The Court reviews de novo the bankruptcy court's conclusions of law.  See Solins v. 1391 Conn. Ave. Assocs., 1996 U.S. Dist. LEXIS 1315 at *6.  Findings of fact must be clearly erroneous to be overturned.  Bankr. R. 8013.

## ANALYSIS

**I.     Applicability and Proper Interpretation of D.C. Code § 29-301.56**

The Bankruptcy Court properly applied and interpreted D.C. Code § 29-301.56 in determining the nature of Crossroad's property interest in the grant.  Although federal bankruptcy law ultimately determines the distribution of estate assets, "[w]hether and to what extent the debtor has an interest in property is a matter of state law."  Rodriguez v. Inmobiliaria Naihomy, 2005 Bankr. LEXIS 2304 at *5 (citing Butner v. United States, 440 U.S. 48, 54 (1979)).  In this

---

[3] Crossroad's debts are so substantial that there will not be any residual funds to transfer or return once the debts and administrative expenses are paid.  Compl. at ¶ 13.

case, the debtor, Crossroad, is incorporated in the District of Columbia, and therefore D.C. law determines its property rights. Section 29-301.56(c) governs the dissolution of nonprofit corporations in the District of Columbia and states, in pertinent part:

> The assets of the corporation or the proceeds resulting from a sale, conveyance, or other disposition thereof shall be applied and distributed as follows:
>
> > (1) All costs and expenses of the court proceedings and all liabilities and obligations of the corporation shall be paid, satisfied, and discharged, or adequate provision shall be made therefor;
> >
> > (2) Assets held by the corporation upon condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution or liquidation, shall be returned, transferred, or conveyed in accordance with such requirements;
> >
> > (3) Assets received and held by the corporation subject to limitations permitting their use for only charitable, religious, eleemosynary, benevolent, educational, or similar purposes, but not held upon a condition requiring return, transfer, or conveyance by reason of the dissolution or liquidation, shall be transferred or conveyed to one or more domestic or foreign corporations, societies, or organizations engaged in activities substantially similar to those of the dissolving or liquidating corporation as the court may direct ...

Section 29-301.56(c)(3) addresses exactly the property at controversy in this case: funds limited by a charitable-use restriction "but not held upon a condition requiring return, transfer, or conveyance by reason of the dissolution or liquidation."  The restrictive language that accompanied the grant limited the funds to charitable use, but Stewart Trust included no express provision for their return or transfer in the event of dissolution or liquidation.  Therefore, the Bankruptcy Court properly looked to § 29-301.56 to determine whether Crossroad maintained a property interest in the grant after it filed for bankruptcy protection.

Having determined that § 29-301.56(c)(3) applies to the funds at controversy in this case, the Court must now determine whether the Bankruptcy Court's interpretation of the statute was correct.  Stewart Trust argues that each subsection of § 29-301.56(c) may be individually

triggered, thereby permitting a transfer of the grant funds under subsection (c)(3) to a charity with a purpose similar to Crossroad even if the provisions of subsection (c)(1) have not been satisfied. The Bankruptcy Court disagreed, holding that principles of statutory interpretation require that the provisions of § 29-301.56 be satisfied sequentially; all liabilities and obligations under § 29-301.56(c)(1) must be paid before §§ 29-301.56(c)(2)-(3) may be considered.

      The Bankruptcy Court's interpretation of the statute is correct. The plain meaning of the language "as follows" suggests that a dissolution or liquidation of a nonprofit corporation under D.C. Code § 29-301.56 should proceed sequentially. The text of the statute reflects an apparent legislative determination that, upon dissolution of a nonprofit corporation, grant funds in the corporation's possession should be used to satisfy corporate liabilities and obligations, notwithstanding any charitable-use limitations. In other words, the ultimate charitable goals of the grantor are subordinate to the corporation's responsibilities to its creditors. Moreover, this scheme of distribution is supported by several policy rationales. For instance, as appellee asserted during the Bankruptcy Court proceeding, it creates an incentive for bankruptcy specialists to assist in dissolution proceedings because § 29-301.56(c)(1) guarantees them compensation. See In re Crossroad Health Ministry, Inc., No. 04-0318, slip op. at 8 (Bankr. D.D.C. Jan. 13, 2005) (hereinafter "Opinion"). The Bankruptcy Court suggested an additional justification: that payment of debts is essential to a nonprofit corporation's operation and, therefore, that the use of grant funds to satisfy debts is not at odds with a grantor's donative intent. Id. at 9 n.2.[4] The Court

---

[4] Furthermore, a rule that would permit grantors to reclaim funds designated for charitable use might make it more difficult for nonprofit corporations to obtain credit at reasonable rates because lenders would be wary that assets of the corporation were acquired through grants designated for charitable use.

therefore affirms the Bankruptcy Court's interpretation of the statute.[5]

## II.    Resulting Trust

Stewart Trust also appeals the Bankruptcy Court's holding that a resulting trust did not arise from the charitable-use limitation that accompanied the grant. It asserts that the funds should be considered to have been held in a charitable trust and that it therefore retained an equitable interest (i.e., a resulting trust) in the event that the charitable purpose of the trust could not be fulfilled. Stewart Trust correctly points out that the Bankruptcy Court's description of a resulting trust was incomplete. The Bankruptcy Court described what is commonly known as a "purchase-money resulting trust," which arises "where property is purchased and the purchase price is paid by one person and at his direction the vendor transfers the property to another person." Restatement (Second) of Trusts § 440 (1959). But a resulting trust also can arise "where a private or charitable trust fails in whole or in part." Id. at § 411. Even assuming that the grant were held in charitable trust, however, the result would be no different here because the trust purpose did not necessarily fail; indeed, the payment of administrative expenses such as payroll taxes for Crossroad's employees is entirely consistent with the charitable purpose of the grant.[6] See In re Boston Regional Medical Center, Inc., 298 B.R. 1, 28-29 (D. Mass. 2003) (the use of

---

[5] The Court will not address Stewart Trust's argument that the doctrine of *cy pres* -- as codified in D.C. Code § 19-1304.13, the D.C. Uniform Trust Code -- should apply because the issue was not raised in the Bankruptcy Court proceedings. See Opinion at 10 ("It is surprising that neither party has addressed the question of whether the D.C. Uniform Trust Code ... is relevant to this dispute."). In any event, Stewart Trust has not explained why the Uniform Trust Code should trump the provisions of § 29-301.56, especially given that the grant contained no clear language indicating an intent to create a trust.

[6] In fact, the grant proposal that Crossroad submitted to Stewart Trust specifically listed the salaries of four employees among the program costs. See Compl. Ex. A (requesting $27,000 for salaries and $5,278 for employee benefits).

funds held in trust for the payment of creditors is not a breach of the trust because it is in furtherance of the organization's charitable purpose).

### III.  Constructive Trust

Finally, Stewart Trust appeals the Bankruptcy Court's refusal to impose a constructive trust.  The term "constructive trust" is misleading because it is not created automatically by a person's conduct or by operation of law; rather, it is an equitable *remedy* that may be imposed by a court when one party would be unjustly enriched if permitted to keep property in its possession.  See Restatement of Restitution § 160 (1937).  The Bankruptcy Court did not abuse its discretion in finding that there was insufficient evidence of fraud or material misrepresentation in Crossroad's solicitation of the grant to warrant the imposition of a constructive trust.  The only factual support that Stewart Trust offered for its allegation of wrongdoing by Crossroad came in the form of the Debtor's Schedules that Crossroad filed with the Bankruptcy Court in 2004, which show that Crossroad owed over $66,000 in back payroll taxes for its employees at the time it applied for the grant in September 2003.  Although it may be fair to infer that Crossroad was aware of this outstanding obligation when it sought the grant, that inference alone does not support a claim that Crossroad either wrongfully concealed relevant facts from Stewart Trust, which had been a regular source of financial support for Crossroad, or that it affirmatively misled Stewart Trust about its finances.  Indeed, there is no evidence in the record to suggest that Stewart Trust ever requested balance-sheet information from grant applicants or that Crossroad ever volunteered information about its assets and liabilities.

### **CONCLUSION**

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

                /s/ John D. Bates
           JOHN D. BATES
        United States District Judge

Dated:   December 16, 2005

Copies to:

Michael Reeves Murphey
LAW & MURPHEY
1320 19th Street, NW
Washington, DC  20036
Email: murpheyusa@aol.com

    *Counsel for appellants*

Kevin Richard McCarthy
MCCARTHY & WHITE, PLLC
8180 Greensboro Drive, Suite 875
McLean, VA  22102
Email: krm@mccarthywhite.com

    *Appellee*